THE EAST ST. LOUIS AND SUBURBAN RAILWAY COMPANY

*v.*

LOUIS F. ZINK.

*Opinion filed October 23, 1907.*

1. TRIAL—*when question of contributory negligence is one of fact.* Whether a passenger waiting for an interurban car at a shed near the track, by the direction of the conductor of the car on which he had been riding, was guilty of contributory negligence in sitting on the platform of the shed next to the track is a question of fact, where it appears the platform was four feet from the track, that the cars projected about one foot, and that several cars had passed him in safety before the car came which caused his injury by jumping the track when near the shed.

2. EVIDENCE—*when proof of custom is admissible to show notice.* Where it is claimed by the defendant interurban railroad that the plaintiff was not a passenger because the car which he had been directed to wait for by the conductor of the car he had been riding on was an employee's car and that the conductor had no authority to direct him to ride on such car, it is proper to permit proof that

many conductors had pursued the same course, as such proof tends to show that the defendant had notice, or should have had notice, of the custom.

3. SAME—*proof that car had jumped the track at other places on the same run is proper.* In an action for injuries received by a waiting passenger, caused by a car jumping the track while running slowly by the shed where the passenger was waiting, proof that the same car had jumped the track at various other places on the run where the track was good and the car was running slowly is admissible for the purpose of showing that the defendant had notice of the defective condition of the car.

4. CARRIERS—*when carrier is estopped to claim that person was not a passenger.* An interurban railroad company which is charged with notice of a custom of its conductors to transfer passengers for a certain point to an employee's car, and which acquiesces in such custom after notice, is estopped to claim that a person directed by a conductor to wait for the employee's car was not a passenger because the conductor had no authority to direct him to ride on it.

5. INSTRUCTIONS—*when failure of instruction to require jury to find plaintiff was a "passenger" is not material.* Failure of an instruction in an action against a carrier to require, in terms, that the jury find the plaintiff was a "passenger" is not material, where it requires the finding of all the facts necessary to establish the relation of carrier and passenger.

6. SAME—*an instruction as to measure of damages construed as not misleading.* An instruction as to the measure of damages, which advises the jury that if the plaintiff "was injured and sustained damages as charged in the declaration, then it will be the duty of the jury," etc., is not misleading, as disregarding the questions of the defendant's negligence and the exercise of due care by the plaintiff, where other instructions advise the jury that they are to look solely to the evidence for the facts and to the instructions for the law and find their verdict accordingly.

7. SAME—*party cannot complain of court's selection from several instructions of like import.* A party who presents to the court several instructions stating the same proposition of law in varying language, cannot complain, on appeal, that the one which the court gave was the least favorable to his case.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the Fourth District affirming a judgment of the circuit court of St. Clair county for $6000, recovered by appellee in an action on the case against appellant for personal injuries.

Suit was brought by appellee at the April term, 1904, against appellant and the East St. Louis Railway Company upon a declaration containing nine counts, which was afterward, on August 28, 1905, amended. The general issue was filed, and upon the trial, after all of the evidence had been introduced, each of the defendants moved the court for a peremptory instruction. The motion of appellant was sustained as to the second, third, fourth, fifth and sixth counts of the declaration and overruled as to the remaining counts. The appellee thereupon dismissed the suit as to the East St. Louis Railway Company and obtained leave to amend the remaining counts of the amended declaration and to proceed against the appellant. To the amended declaration as again amended the general issue theretofore filed was extended. Appellant then moved the court to instruct the jury to find it not guilty as to the declaration as lastly amended, which motion was denied. The jury returned a verdict finding the appellant guilty on the eighth and ninth counts of the declaration, and after the court had overruled the defendant's motion for a new trial, judgment was entered on the verdict.

The eighth count, as finally amended, charges that defendant, on September 7, 1906, possessed and operated a certain electric railroad, etc., and that it carelessly and negligently operated and ran a certain car the gauge of which was too narrow for the tracks, rendering the car liable to leave the tracks, of which defendant had notice or should have had notice; that plaintiff boarded a certain car of defendant to be carried to Belleville and was received as a passenger in said car; that while riding on said car near the city limits of East St. Louis the conductor of said car in-

formed him that he must change cars, and ordered and directed him to go and wait at a certain station of defendant, used by the public in waiting for cars, for the coming and leaving of a certain other car going to the city of Belleville, and while so waiting in said station, without notice of the said defect in the first mentioned car and while he was in the exercise of due care, etc., said car, by reason of said defect, ran off the track at said station and injured him.

The ninth count, as submitted to the jury, alleges that plaintiff, while in the city of East St. Louis, was received as a passenger upon defendant's car to be carried to Belleville, and while being so carried the conductor informed him that he must change cars, and directed him to wait at a certain station or waiting room near the tracks of defendant for the leaving of another car for the city of Belleville; that while waiting at said station in pursuance of said order, without notice of any danger, in the exercise of due care and caution for his own safety, the defendant, through its agents and servants, carelessly and negligently drove and operated a certain car, and by reason thereof it ran off the track up to and against said waiting room and the plaintiff, and injured the plaintiff, etc.

At the time of the injuries alleged, appellant was engaged in operating a street railway line in the city of East St. Louis and also a line from that city to the city of Belleville, Illinois. The cars running from Belleville enter the city of East St. Louis on State street, which runs in an easterly and westerly direction. On the south side of State street, at a distance of about a mile from the east limits of East St. Louis, are located the car shed, power house and machine shops of appellant. The car shed is about three hundred feet south of the south line of State street, and in this building there is a restaurant and reading room, supplied with chairs designed for the convenience of employees, in which passengers could wait for cars. On the east side of the yards in front of the car shed there was a single track,

called a "shed track," connecting with a number of tracks extending into the shed. The north end of this track had a "Y" connection with the State street tracks, so that cars could be taken into the yards and shed from either the east or west, on State street. A few feet south of the point of connection of the two tracks constituting the "Y," and about seventy-five feet south from State street, at a distance of four feet and nine inches from the west rail of the track and on the west side thereof, there was a small shed, known as the oil shed. This shed was ten or twelve feet in length from north to south and about eight feet in width, and contained a board floor one foot from the ground. This shed was open on the front, which faced the track, and was also open a short distance back from the front on each end, and was used as a storehouse for detachable headlights, oil, sand, buckets, wire and other materials needed in the operation of the road, and also as a waiting room or station for the convenience of passengers waiting to take the employees' car hereinafter referred to. The last passenger car for Belleville left East St. Louis at midnight, and no regular passenger cars were operated between those points from that time until 5 o'clock in the morning. All cars were turned into the sheds over the shed track at about 1 or 1:15 o'clock in the morning, and then an employees' or work car was run from East St. Louis to Belleville for the purpose of carrying conductors and motormen who had turned in their cars, and who lived at Belleville, to their homes. Whether the employees who had charge of this car had authority to carry passengers thereon was one of the contested questions in the case. Passengers were very frequently carried on that car.

On the morning of September 7, 1903, at about a quarter past twelve o'clock, appellee boarded one of the suburban cars in the business portion of East St. Louis for his home in Belleville. He testifies that the conductor told him that the car did not go to Belleville but stopped at the sheds and that he could ride from there on the work car. When the

car turned into the yards and stopped in front of the oil shed, appellee testifies that the conductor told him to get off and wait there for the car which would take the employees to Belleville, and that he obeyed. At this time there were six or eight other persons at the shed or standing a short distance away, also intending to take the employees' car for Belleville or intermediate points. Appellee seated himself on the edge of the floor at the north-east corner of the shed, facing the shed track, with his feet on the ground outside the shed, and while he sat there several cars were turned in and passed him on the way to the car sheds. During the earlier part of that night one of the cars of the city line was several times derailed. The conductor of that car testifies that this resulted from a "sprung axle," which narrowed the gauge of the car. When this car arrived at the yards appellee was still seated on the floor of the oil shed, as above described. The car was driven to the east on State street until it had passed both branches of the "Y." The trolley pole was then turned and the motorman took his position on the westerly end of the car, and it was driven on the easterly track of the "Y" to connect with the track leading to the sheds. When the car, which was being run at a very slow rate, was ten or fifteen feet from appellee it was stopped, and just before it started the motorman rang the gong. He testifies that appellee motioned with his arm to come ahead, and that he (the motorman) thereupon told him that he had better get up, but that he did not move. Appellee denies that he heard this advice. The car proceeded to the south, and when the rear truck was about opposite the point where appellee was seated it left the track, swung over toward appellee and ran against him and the floor of the shed, crushing his right leg so badly that it was necessary to have it amputated.

. Appellant urges as grounds for reversal: (1) The court erred in denying defendant's motion for a peremptory instruction at the close of all the evidence; (2) the court

erred in passing on objections to evidence; (3) the court erred in passing on instructions.

SCHAEFER, FARMER & KRUGER, for appellant.

WEBB & WEBB, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The evidence in this case not only tends to show, but clearly establishes, that appellee was a passenger of appellant, and that he was waiting at the oil shed, by direction of the conductor of the car upon which he had been riding, for the purpose of taking another car upon which passengers were carried, with the authority or sanction of the appellant, from East St. Louis to Belleville, and that the oil shed in question, with like sanction and authority, was used as a passenger station, and that appellant was guilty of the negligence charged in the eighth count.

The only question arising upon the motion for a directed verdict which is entitled to serious consideration is that of contributory negligence. The shed in question was on the west side of the track upon which the car that injured appellee was traveling. The shed was open on the east side toward the track, and there was an open space at each end, extending west a little way from the east side of the shed. There was a floor in this shed a foot above the ground, and that floor is commonly referred to as the platform, although it did not extend beyond the roof of the structure. From the edge of the floor to the track was a distance of four feet and nine inches. That space was not occupied by any platform and there was no station platform there within the ordinary meaning of that term,—that is, there was no platform between the structure itself and the tracks upon which passengers could easily and conveniently pass to the steps of cars stopping at that station without stepping upon the ground. Appellee was sitting on the north-east corner of the floor of the station. The car which injured him, when

on the rails, projected to the outer side of the rail about one foot. While he was sitting in this position three cars of like character passed him without injuring him or touching him. As he sat there he was entirely beyond the reach of any part of such car, and was not where he was apt to come in contact with persons stepping off the car or with articles carried from the car by passengers. The car which injured him, according to the statement of appellant in its brief and argument in this court, "was being moved very slowly and carefully and at a rate of about two miles an hour."

It may be conceded that the individual who sits down on the edge of the ordinary railroad station platform on the side thereof next the rail, with his legs projecting over the edge, where cars are frequently passing, and who is injured by a passing car, is not in the exercise of due care for his personal safety. It is also equally certain that if the same individual sits on the edge of a platform belonging to a railroad company at a distance of twenty-five feet from the tracks, he is not, by reason of taking that position, guilty of any negligence that would contribute to an injury received from a passing car. And it is equally clear that if the individual is so located at some one of certain points between these two extremes more or less remote from the tracks, the question whether or not he is guilty of contributory negligence where he sustains injury from a passing car becomes a question of fact to be determined by the jury. This man, in his position on the floor of the station, was entirely safe so long as the cars of the appellant were properly managed and remained upon the track and so long as appellant itself was guilty of no negligence. He could not, with reason, contemplate or expect any combination of circumstances that would bring the car of appellant which injured him in contact with his person at the place where he sat. We think, under these circumstances, it cannot be said, as a matter of law, that he was guilty of contributory negligence, and for this reason the peremptory instruction was properly refused.

It was contended by appellant upon the trial that its conductors were without authority to permit passengers to ride upon the employees' car, which appellee was awaiting, and that for this reason he could not be regarded as a passenger at the time he received his injury. The court permitted the appellee to show that many conductors, at various times in the past, had directed passengers to leave the car upon which they were then riding and take this employees' car for Belleville, and that such passengers followed such directions and were carried on that car to Belleville without objection, upon the payment of the ordinary fare. It is urged that this testimony was improperly admitted. This proof covered a lengthy period of time, and we think it was proper for the purpose of showing that the company had notice, or should have had notice, of the custom, and if it permitted the practice to continue after a time when it had, or should have had, notice thereof, it could not successfully contend that passengers were improperly permitted to ride upon the employees' car in question.

Complaint is also made of the action of the court in permitting appellee to prove that the car which injured him had during the same night, at different places on the lines of appellant, left the track. This evidence was offered in support of the eighth count of the declaration, that being one of the counts upon which the issues were found for appellee, and is said to have been improper for the reason that no evidence was offered showing the condition of the track at the various places where the car left the track nor showing the manner in which the car was operated on the earlier occasions. We think this contention ignores certain testimony that appears in the record. Hart, the motorman on the car in question, testified: "Down town we got off on Summit avenue. The condition of the track and street on Summit avenue where we got off was good. I operated the car at about five miles an hour. The track there was straight and the street paved. During that run and during

that night the car left the track five or six times," and that on each occasion when the car left the track it "was running slow." The testimony was proper for the purpose of showing that the company had knowledge of the alleged defective condition of the car.

It is also contended that certain evidence offered in support of counts of the declaration other than the eighth and ninth was improperly admitted. As the appellant was not found guilty upon such other counts, and as the evidence was not of a character to prejudice the jury against the appellant in the trial of the issues presented by the plea to the eighth and ninth counts, its admission, even if it was not competent, was harmless.

Two instructions were given on behalf of the appellee. In the first the jury were advised "that if you believe, from the evidence in this case," etc., and it is said that it was erroneous in omitting any reference to the preponderance of the evidence. If this point be well taken the error was cured by instructions given on behalf of appellant, from which the jury would understand that no recovery could be had unless the plaintiff's cause was established by a preponderance of the proof. This instruction purported to set out facts which, if established, would authorize a verdict in favor of appellee, and is said to be erroneous because it does not require the jury, before returning a verdict for appellee, to find that he was a passenger at the time of the injury. The instruction does not, in terms, require a finding that he was a "passenger," but it does require the finding of facts which establish the relation of passenger and carrier.

The next instruction is the ordinary one in reference to the measure of damages, and advises the jury that if appellee "was injured and sustained damages as charged in his declaration, then it will be the duty of the jury," etc. It is said that this instruction disregards the question whether appellant was guilty of the negligence charged and whether appellee was in the exercise of due care. He was not in-

jured as charged in the declaration unless the appellant was guilty of the negligence therein averred, and unless appellee, at the time of receiving the injury, was in the exercise of due care. This instruction did not specifically require the jury to consider the instructions of the court in determining the question of appellant's guilt. It dealt only, however, with the situation that would arise in case the jury determined to find in favor of appellee. This instruction contained no direction to the jury as to the course to be pursued by them in determining the guilt or innocence of the appellant. As stated in *Chicago and Alton Railroad Co.* v. *McDonnell*, 194 Ill. 82, in considering a like defect in an instruction on this subject, "the fault of the instruction has no relevancy to the measurement of the amount of damages, therefore we think it safe to assume that no prejudice resulted to appellant by reason of the error." In the case at bar the jury were advised by the eighth instruction given at the request of appellant that they "should look solely to the evidence for the facts and to the instructions of the court for the law of the case, and find your verdict accordingly," which, we think, cured the defect now under consideration, if it could, in any event, be regarded as material.

Appellant, among others, asked three instructions, numbered, respectively, 3, 21 and 22, each of which, in substance, advised the jury that if appellee, at the time he received the injury, was not a passenger of the appellant but was a trespasser upon its property he could not recover. The court gave the instruction numbered 3 and refused those numbered 21 and 22. Appellant complains of the refusal of the two last mentioned, and says that the third stated the proposition abstractly while the other two applied it to the facts of this case, and that if the court did not desire to give all, the third should have been refused and the twenty-first and twenty-second given. Where a party asks more than one instruction, stating, in varying language, the same proposition, his complaint that the court refused the one which the

party deems most favorable to his cause and gave the other does not deserve extended notice. Appellant could have avoided this difficulty by presenting to the court only that one of these three instructions which was to it most satisfactory. *Indiana, Illinois and Iowa Railroad Co.* v. *Otstot,* 212 Ill. 429.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*